JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Jessley Vargas 2663 Sepvia St., Phila PA 19125

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

L. Kenneth Chotiner, 50 E. Wynnewood Rd., Ste-22-378, Wynnewood, PA 19096 215.564.6544

## DEFENDANTS

The City of Philadelphia and Defendnat Officers, c/o Law Department. 1515 Arch Street. Phila. PA 19103

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                          *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 USC Sect. 1983

Brief description of cause:
Civil Rights False Arrest, False Imprisonment, Malicious Prosecution

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
January 17, 2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 2663 Sepvia St, Philadelphia, PA 19125 _____

Address of Defendant: _____ 1515 Arch Street, Philadelphia, PA 19102 _____

Place of Accident, Incident or Transaction: _____ Philadelphia, PA _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 01/17/2022 _____ _____  077451x
_____  *Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**  *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.**  *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ L. Kenneth Chotiner _____, counsel of record *or pro se plaintiff,* do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 01/17/2022 _____ _____  77451
_____  *Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Jessley Vargas | : | **CIVIL ACTION** |
| v. | : | |
| The City of Philadelphia, et al. | : | **NO.** |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                        (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                        (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                        (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                        (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                        (x)

| | | |
|---|---|---|
| 1/17/2022 | L. Kenneth Chotiner, LL.M. | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215.564.6544 | 2153830370 | LKC@theChotinerFirm.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JESSLEY VARGAS** <br>                                    **Plaintiff** | **CIVIL ACTION** |
| **Vs.** | **No.: 22-CV-** |
| **OFFICER STANLEY DAVIS, JR., BADGE NO. 9660,** <br> **OFFICER CHARLES MYERS, BADGE NO. 2103,** <br> **OFFICER CRUZ, BADGE NO. 6979,** <br> **OFFICER HARRY PARFITT, BADGE NO. 2626** <br> **OFFICER SUTTON, BADGE NO. 6887** <br> **AND** <br> **THE CITY OF PHILADELPHIA** <br>                                **Defendants** | **JURY TRIAL DEMANDED** |

**COMPLAINT**

## I.    Preliminary Statement

1.    Plaintiff brings this action under 42 U.S.C. §1983 seeking redress for the extraordinary misconduct of Philadelphia police officers who used improper and unconstitutional means to secure search warrants by deception and misrepresentation, search persons and property in violation of the Constitution, and subject citizens to unlawful arrest, detention and prosecution. The actions and conduct of the Defendant police officers were the result of policies, practices, customs, and deliberate indifference on the part of Defendant, the City of Philadelphia (the "City"), including the failure to take disciplinary and remedial action against the Defendant officers and other Philadelphia police officers despite documented records of misconduct and abuses of authority.

## II.   JURISDICTION

2.      This action is brought pursuant to 42 U.S.C. Sections 1983. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(1),(3),(4) and the aforementioned statutory provision. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law.

## II.   PARTIES

3.      Plaintiff, Jessley Vargas, is a resident and citizen of the Commonwealth of Pennsylvania, and, at all times relevant to this action, was in the Eastern District of Pennsylvania.

4.      Defendants, Philadelphia Police Officers, Stanley Davis, Jr., Badge No. 9660, Officer Charles Myers, Badge No. 2103, Officer Harry Parfitt, Badge No. 2626, Officer Cruz, Badge No. 6979, and, Officer Sutton, Badge No. 6887, ("the Defendant Officers") were at all times relevant hereto police officers for the Philadelphia Police Department acting under the color of state law. The Defendant Officers were at all times relevant to this Complaint, Police Officers for the City of Philadelphia and acted under the color of state law. They are being sued in both their individual and official capacities.

5.      Defendant, the City of Philadelphia (the "City"), is a municipality of the Commonwealth of Pennsylvania and owns, operates, manages, directs and controls the Philadelphia Police Department, which at all relevant times employed the Defendant Officers.

6.      At all relevant times, all defendants were acting in concert and conspiracy with themselves and others by and through the Philadelphia Police Department, and, their actions deprived the plaintiff of his constitutional and statutory rights.

2

7.     At all times relevant to this Complaint, all defendants acted under color of state law.

## III.    FACTS

8.     For more than twenty years, Philadelphia police officers assigned to various narcotics units have engaged in a pattern and practice of securing search warrants based on fraud and misrepresentation, the misuse of informants, the improper execution of search warrants, the falsification of evidence, the destruction and theft of personal property, and related misconduct.

9.     Not only has the City of Philadelphia has failed to take appropriate remedial measures to prevent misconduct of this nature, it has adopted an official policy that helps foster such misconduct.

10.    In January 2009, the Philadelphia Police Department implemented a written policy that requires supervisors to remove from all police paperwork the names of police witnesses who possess exculpatory information. In pertinent part, that policy states:

> Platoon commanders will be required to review and initial all arrest and investigative reports, including PARS reports[1], to ensure that only those officers/investigators who are necessary for the successful outcome of the case are listed.

(See Memorandum (09-01)(the "Policy"), §III. A. (1), attached as Exhibit "A.")

The meaning of the phrase "successful outcome" is so obvious that it is not defined further. Id.

---

[1] As the Court may be aware, the arrest and investigative reports, including PARS reports, are the police paperwork that is typically provided to an accused in a criminal case. It is this police paperwork that helps an accused identify, among others, police witnesses.

3

11.     Pursuant to the Policy, Police supervisors are required to remove from all police paperwork the names of any police officer that witnessed events, which would be useful by a defendant in a criminal case, because such officers would not "ensure" a "successful outcome." In other words, the City of Philadelphia, by and through its Police Department, officially adopted a written policy to enforce a code of silence or "blue code," which prohibits Officers from intervening or providing truthful information against constitutional violations and other unlawful misconduct committed by their fellow Officers.

12.     That "successful outcome" means conviction is further evinced by the fact that the Standard Operating Procedures implementing the Memorandum state that "only those officers necessary for prosecution will be subpoenaed to court." (See Exhibit "B.")

13.     Philadelphia Police Department, Commissioner Charles Ramsey's implementation of the written policy, just memorialized what had been an unofficial policy and/or custom of the Philadelphia Police Department at the time plaintiff was arrested and before.

14.     On or about March 24, 2015, some or all of the Defendant Officers, including Defendant Davis, were assigned to the Philadelphia Police Department's Drug Task Force and went to the area around the intersection of H and Thayer Streets in the City and County of Philadelphia.

15.     There, Defendants, Officers Cruz and Davis, claim they met with reliable Confidential Informant, No. 01195, who they searched with negative results and gave $40 of prerecorded buy money.

16.     The Defendant Officers claim that the confidential informant approach and engaged in a conversation with Plaintiff, Jessley Vargas, who then accepted the $40 pre-

4

recorded buy money in exchange for four (4) red plastic containers filled with alleged crack cocaine.

17.     Police reported that Defendant, Officer Davis, gave flash information about Plaintiff, Jessley Vargas, who was walking away.

18.     Police reported that Defendants, Officers Parfitt and Sutton, stopped Plaintiff in the area of 800 E. Cornwall Street, Philadelphia, and recovered the buy money as well as an additional $493.00.

19.     Defendants, Officers Parfitt and Sutton, did not recover anything else.

20.     However, Defendant, Officer Myers, claims that he spoke to Plaintiff who then turned over five (5) red plastic containers identical to the ones purchased by the Confidential Informant.

21.     The Defendant Officers and other officers gave false statements concerning the incident described in the complaint.

22.     The Defendant Officers and other officers prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff for the incident described in this complaint. Those misrepresentations include, but are not limited to:

  a. That they had probable cause to arrest the Plaintiff; and,

  b. That, to conceal their illegal activities, the Defendant Officers lied about the times of their activities; the times indicated in their reports of events, which did not occur.

23.     Defendant Officers were aware of exculpatory information about the Plaintiff.

24.     The Defendant Officers failed to provide exculpatory information known to them to the Plaintiff or his criminal counsel via police paperwork or any other means after the arrest.

25.    The exculpatory information known to police, and Defendant, the City, that was not provided to the Plaintiff included the real facts and circumstances of the incident.

26.    The misrepresentations contained in the arrest report and other police paperwork were material to the probable cause determination of the arrest; indeed, without these material misrepresentations, there was no probable cause to warrant Plaintiff's arrest.

27.    Plaintiff was subsequently charged with various drug crimes and conspiracy under the Municipal Court of Philadelphia County, Criminal Docket number MC-51-CR-0008719-2015.

28.    Bail was set at $10,000.00, which Plaintiff did not post.

29.    On April 16, 2015, those charges were held for court.

30.    On July 17, 2015, under Docket Number CP-51-CR-0004124-2015, Plaintiff entered into a negotiated guilty plea and was sentenced to a period of incarceration of six (6) months to twenty-three (23) months with credit for time served and immediate parole.

31.    On December 16, 2016, Defendant, Officer Davis, knowingly and intentionally distributed a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance in violation of Title 21, United States Code Section 841(a)(1), (b)(1), and (c) to which he ultimately plead guilty on or about August 25, 2017.

32.    On July 20, 2017, an Information was Filed in Federal Court against Defendant, Officer Davis, for the crime he committed on December 16, 2016, and to which he subsequently pled guilty.

33.     The actions of the Defendant Officers in submitting materially false information in police paperwork and perjured testimony in court was part of a practice and custom of the Defendant Officers and other officers in the Philadelphia Police Department to secure the "successful outcome" by ensuring that "only those officers necessary for prosecution will be subpoenaed" pursuant to an unwritten policy that was memorialized by Memorandum (09-01) and the Standard Operating Procedure implementing that memorandum. This practice and custom was fortified by the written policy that *white-washes* police paperwork. (See Exhibits "A," II. A. 1., and Exhibit "B," III. D.)

34.     The Defendant Officers disregarded proper police practices regarding the use police paperwork and investigations. These actions led to the improper conduct in this case.

35.     The Defendant Officers, acting in concert and conspiracy, with themselves and others, caused the plaintiff to be unlawfully arrested, subjected to false criminal charges, malicious prosecution and prolonged detention by falsifying information in the search warrant affidavit, failing to disclose to prosecutors the fact that the information provided to the judicial officer in support of the search warrant was false and misleading, fabricating evidence to support the claim that the plaintiff was involved in criminal activity, and failing to disclose other exculpatory evidence regarding these criminal charges.

36.     On August 6, 2021, Plaintiff's PCRA Petition was granted and the charges against him were *nolle prossed*.

37.     Plaintiff did not commit any offenses against the laws of the Commonwealth of Pennsylvania, the United States or the City of Philadelphia, or engage in any conduct which justified the actions of all defendants.

7

38.     The unlawful arrest, detention and malicious prosecution in this case were the direct result of all defendants' pattern, practice and custom of subjecting citizens such as the plaintiff to arrest, prosecution and incarceration in the absence of probable cause.

39.     The Defendant Officers acted willfully, deliberately, maliciously or with reckless disregard of the plaintiff's constitutional and statutory rights.

40.     As a direct and proximate result of the actions of all defendants, the Plaintiff suffered and continues to suffer physical harms, pain and suffering, some or all of which may be permanent, as well as financial losses.

41.     All defendants engaged in the aforesaid conduct for the purpose of violating Plaintiff's constitutional rights by subjecting Plaintiff to unlawful arrest, malicious prosecution, and prolonged detention.

42.     The above described actions of all of the defendants caused the violations of the plaintiff's rights under the Fourth and Fourteenth Amendments as alleged in this Complaint.

### FIRST CAUSE OF ACTION
### AGAINST THE INDIVIDUAL DEFENDANTS
### FEDERAL CIVIL RIGHTS VIOLATIONS

43.     The allegations set forth in the foregoing paragraphs are incorporated herein as if fully set forth.

44.     As a direct and proximate result of all Defendants' conduct, committed under color of state law, Defendants deprived Plaintiff of his rights, privileges and immunities under the laws and the Constitution of the United States; Plaintiffs' right to be free from unreasonable searches and seizures, excessive force, false arrest, false imprisonment, malicious prosecution, verbal abuse, to be secure in ones' person and property, and to due process and equal protection of law. As a result, Plaintiff suffered and continues to suffer harm in violation of Plaintiff's rights under the laws and Constitution of

the United States, in particular the First, Fourth, Fifth, Sixth, and Fourteenth Amendments thereof, and 42 U.S.C. §1983 and §1985.

45.    As a direct and proximate result of the acts and omissions of all Defendants, Plaintiff endured pain, suffering, emotional harm and financial losses, and was deprived of liberty and property, all to Plaintiff's detriment and loss.

## SECOND CAUSE OF ACTION
## AGAINST DEFENDANT THE CITY OF PHILADELPHIA
## FEDERAL CIVIL RIGHTS (MONELL) CLAIMS

46.    The allegations set forth in the foregoing paragraphs are incorporated herein as if fully set forth.

47.    Defendant, the City of Philadelphia, has encouraged, tolerated, ratified and has been deliberately indifferent to the following patterns, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

a. The abuse of police powers, including but not limited to excessive force, unlawful detention, false arrest, malicious prosecution;

b. The failure of police officers to follow constitutional policies and procedures regarding the use of photographic lineups;

c. The failure of the Philadelphia Police Department to maintain proper police reports, including the identity of police eyewitness information;

d. The failure of police officers to prevent, deter, report or to take action against the unlawful conduct of other officers under such circumstances as presented herein.

48.    Defendant, the City, failed to properly sanction or discipline officers, who are aware and subsequently conceal and/or aid and abet violations of constitutional rights of citizens by other police officers, thereby causing and encouraging police, including the individual Defendants, to violate the rights of citizens such as Plaintiff.

49.     Defendant, the City of Philadelphia, is deliberately indifferent to the need to train, supervise and discipline police officers. Plaintiff believes and therefore avers that the Internal Affairs Division (IAD) of the City of Philadelphia Police Department (PPD) fails to provide an internal disciplinary mechanism that imposes meaningful disciplinary and remedial actions in the following respects:

    a. There are excessive and chronic delays in resolving disciplinary complaints;

    b. There is a lack of consistent, rational and meaningful disciplinary and remedial actions;

    c. There is a failure to effectively discipline substantial numbers of officers who were found to have engaged in misconduct.

    d. The PPD's internal investigatory process has fallen below accepted practices and is arbitrary and inconsistent;

    e. The PPD discipline, as practiced, is incident based rather than progressive. Thus, repeat violators are not being penalized in proportion to the number of violations;

    f. The conduct of IAD investigations demonstrates that PPD internal affairs personnel are not adequately trained and supervised in the proper conduct of such investigations;

    g. A global analysis of IAD's investigatory procedures indicates a pattern of administrative conduct where the benefit of the doubt is given to the officer rather than the complainant;

    h. There are serious deficiencies in the quality of IAD investigations and the validity of the IAD findings and conclusions;

    i. The PPD lacks an effective early warning system to identify, track and monitor "problem" officers.

    j. Despite the fact that several of the Defendant Officers had amassed an exceptionally large number of serious misconduct complaints, the officers stayed well below the radar of an early warning system;

    k. Despite numerous prior complaints against several of the Defendant Officers, the PPD took no meaningful disciplinary or remedial actions;

    l. Despite numerous prior complaints against several of the Defendant Officers, the PPD took no meaningful steps to more closely monitor, retrain and supervise the offices;

m. IAD frequently fails to interview available eyewitnesses to incidents involving citizen complaints of misconduct. The interviews that are conducted by IAD are below acceptable standards of police practice and fail to address key issues in the cases; and

n. IAD fails to acknowledge the disproportionate and extreme use of force used by police officers in the investigation of citizen complaints and fails to properly categorize the police officers' misconduct in those cases as an impermissible use of force.

50.     By these actions, all Defendants, acting in concert and conspiracy, have deprived Plaintiff of rights secured by the First, Fourth, Fifth, Sixth, and Fourteenth Amendments thereof, and 42 U.S.C. §1983 and §1985.

## THIRD CAUSE OF ACTION
## SUPPLEMENTAL STATE CLAIMS

51.     The allegations set forth in the foregoing paragraphs are incorporated herein as if fully set forth.

52.     The acts and conduct of the Defendant Officers in this cause of action constitute false arrest/false imprisonment, malicious prosecution, assault and battery, and, conversion, under the laws of the Commonwealth of Pennsylvania, and this Court has supplemental jurisdiction to hear and adjudicate these claims.

**WHEREFORE**, plaintiff respectfully requests the following relief:

a.  Compensatory damages as to all defendants;

b.  Punitive damages as to the individual defendants;

c.  Reasonable attorney's fees and costs as to all defendants;

d.  Such other declaratory and further relief as appears reasonable and just; and,

e.  A jury trial as to each defendant and as to each count.

Dated: January 17, 2022

L. KENNETH CHOTINER, LL.M.
Attorney I.D. No. 77451
THE CHOTINER FIRM
50 E. Wynnewood Road, Suite 22-378
Wynnewood, PA 19096
215.564.6544
Counsel for Plaintiff

EXHIBIT "A"



**PHILADELPHIA POLICE DEPARTMENT**

**MEMORANDUM (09-01)**

**SUBJECT:  OVERTIME MANAGEMENT** (01-28-09)

## I.  POLICY

A. Managing overtime costs are an essential element of supervisory and management responsibilities. The underlying goal of these procedures is to use overtime only when necessary; not to impede legitimate policing and investigative work. The following measures for all personnel in the Philadelphia Police Department (PPD) shall be implemented immediately. The purpose of these Department-wide procedures is to achieve uniformity in performance of our public service mission and to provide consistency in determining the need, use, distribution and management of overtime usage and in accordance with Directive 99 -- "Overtime Pay and Compensatory Time" and Directive 13 -- "Court Notices and Subpoenas."

## II.  PROCEDURES FOR NON-COURT OVERTIME

A. Following the end of each pay period, the Administrative Service Bureau shall provide an overtime monitoring report to each unit detailing the use of overtime by type. A department summary will be provided to the Police Commissioner.

B. The responsibilities set forth below outline general guidelines and procedures applicable to all police personnel receiving non-court overtime compensation, including but not limited to arrest, investigative and administrative overtime. These guidelines and procedures do not pertain to overtime used for special events or federally-funded task forces, unless otherwise ordered.

C. Staffing should be planned so that most cases require only essential overtime. When significant and recurring overtime is required, other alternatives should be considered such as redistribution of workload, postponement of the work, or the use of temporary help. Overtime pay should not be used as a means to provide supplemental pay to an employee.

D. Personnel members on less than full-duty status are not normally eligible for non-court overtime compensation. Exceptions may be requested through the chain of command for approval by the Deputy Commissioner for Organizational Support Services.



- 1 -

E. Commanders/Managers shall be responsible for approving non-court overtime for employees within their respective unit, division or bureau. Approval may only be delegated in the manner listed below.

   1. The Commanding Officer/Manager may give discretion to Platoon Commanders to approve discretionary overtime for two (2) hours.

   2. The Commanding Officer must approve all overtime greater than two (2) hours and up to six (6) hours.

   3. The Divisional Commanders (Inspector) must approve all discretionary overtime greater than six (6) hours.

F. Commanders/Managers shall approve all overtime assignments prior to overtime being worked by police personnel. Advance authorization is required for overtime usage, unless exigent public safety and/or emergency conditions exist which necessitate approval after overtime usage has occurred.

G. The Request to Work Non-Court Overtime Form (75-57) shall be available to all employees within each unit, and be completed by the employee working overtime.

   1. Upon written approval (signature) by the respective Commanders, or designee as outlined above, for each unit, the Request to Work Non-Court Overtime Form (75-57) shall be attached to the Daily Attendance Record (DAR).

   2. Commanding Officers will collect, maintain and store all Overtime Authorization Forms in a manner consistent with the retention of the DARs as defined in Directive 115 – "Records Retention and Disposition Protocol."

H. Commanders/Managers shall be provided with a report at the end of each pay period for the purposes of monitoring and reviewing the use of overtime. Corrective action shall be taken as appropriate to ensure the appropriate use of overtime. This is an essential managerial task, and must be done in conjunction with the approval process for all employees within each respective unit.

---

## III. PROCEDURES FOR COURT OVERTIME

A. Commanders/Managers shall also be responsible for reviewing and monitoring all court overtime for all employees in their respective units.

   1. Platoon commanders will be required to review and initial all arrest and investigative reports, including PARS reports, to ensure that only those officers/investigators who are necessary for the successful outcome of the case are listed.

2. All reports should clearly articulate the facts and circumstances of each case. Platoon commanders are responsible for ensuring that reports comprehensively capture the exact actions relevant to that case for each personnel member listed, including the supervisor.

B. Supervisors shall ensure that they are directing an investigation appropriately and not placing themselves in a position that will require their testimony at a later date. A supervisor shall, upon receipt of any court notices requesting his/her presence, make this court notice known to his/her Commanding Officer.

C. Assigned investigative supervisors maintain the overall responsibility for case management, including the number of police personnel involved in each case. When feasible, the lead investigator, or co-investigator, will assume responsibility for handing multiple components of each case, including collecting physical evidence, writing property receipts, taking statements, and assuming the role of affiant on the search or arrest warrant. The narrative description included on all search or arrest warrants should match these assigned roles and responsibilities.

D. All court notices, especially Preliminary Hearings, will be reviewed by platoon supervisors to determine whether the subpoenaed member is necessary. Attention should also be paid to the number of personnel subpoenaed for a particular case as well as the number of consecutive days personnel are required to attend the same case.

1. Whenever there appears to be unnecessary personnel requested on a case, the supervisor will contact the Overtime Management Unit (215-685-3674 or 75) to refer the case for their review.

2. Whenever there are six (6) or more personnel subpoenaed on the same case, the supervisor will contact the Overtime Management Unit to refer the case for their review.

E. When police personnel are subpoenaed for court on a Scheduled Day Off (SDO), the platoon supervisor shall initiate an immediate review of the case and arrest paperwork to determine the need for the officer's appearance. If it appears that the officer is unnecessary, the supervisor shall contact the Overtime Management Unit to refer the case for their review.

---

## IV.  COMPLIANCE

A. All personnel who receive overtime compensation shall participate in managing usage in a manner that is consistent with the procedures outlined in this memorandum. Accountability for overtime usage rests with every individual member of the Department.

B. This department-wide procedure sets the minimum requirements that all members must follow. Since the functions and responsibilities vary within each unit of the Philadelphia Police Department, bureaus may establish additional standard operating procedures (SOP). Such procedures shall not override the requirements stated here. All such SOPs shall be forwarded to the newly created Division of Standards and Accountability.

C. Unit commanders shall be responsible for the following:

   1. Approving overtime requests in accordance with the procedures outlined in this memorandum.

   2. Tracking the use of overtime by assigned personnel.

   3. Reviewing and monitoring all overtime usage for their respective unit on a monthly basis.

D. The Division of Standards and Accountability, under the Office of Operational Coordination and Accountability shall be charged with the following:

   1. Monitoring, analyzing and ensuring compliance with appropriate overtime usage protocols.

   2. Reviewing all unit-generated procedures on overtime management and providing corrective feedback to ensure compliance with this document.

   3. Identifying, analyzing and determining the appropriateness of individuals earning large amounts of overtime.

   4. Attend monthly COMPSTAT sessions for issues concerning overtime usage.

E. Overtime abuses or failures to comply with the above standard operating procedures shall be subject to disciplinary action.

---

**CHARLES H. RAMSEY**
Commissioner

---

| FOOTNOTE # | GENERAL # | DATE SENT | REVISION |
|---|---|---|---|
| *1 | 5671 (bt) 5672 (al) | 01-30-09 | Phone Number Change |

- 4 -

EXHIBIT "B"

**I.** **SCOPE**

    **A.** The following measures for Field Operations Bureau Personnel shall be implemented immediately in order to meet the fiscal demands of the City of Philadelphia. The purpose of this Department-wide standard operating procedure (SOP) is to achieve uniformity in performance of our public service mission and to provide consistency in determining the need, use, distribution and management of overtime usage.

    **B.** In addition to Directive # 13 – Court Notices and Subpoenas and Memorandum 09-01- Overtime Management, personnel will adhere to the roles and responsibilities contained in this Standard Operating Procedure.

**II.** **ROLES AND RESPONSIBILITIES**

    **A.** Commanders/Managers shall be responsible for approving Non-Court Overtime assignments for employees within their respective unit, bureau or division.

        **i.** Commanders/Managers shall be responsible for ensuring that overtime usage is being used appropriately and effectively, and that all employees in their respective units are complying with the following standard operating procedure.

    **B.** Commanders/Managers shall approve all overtime assignments prior to overtime being worked by PPD personnel. Advance authorization is required for overtime usage, unless exigent public safety and/or emergency conditions exist which necessitate approval after overtime usage has occurred.

    **C.** The following approvals shall be required for all overtime usage:

        **i.** Commanding Officers shall approve all overtime for investigative personnel.

            **a.** The Commanding Officer may give discretion to Platoon Commanders to approve investigative overtime for two (2) hours provided that the investigation does not involve more than two officers.

            **b.** The Commanding Officer must approve all overtime greater than two (2) hours and up to six (6) hours, as well as situations that arise where more than two officers are needed on a particular case.

            **c.** The Divisional Commanders (Inspector) must approve all investigative overtime greater than six (6) hours. There is no exception to these procedures and approval cannot be delegated to supervisory personnel.

    **D.** The Overtime Authorization Form (75-57) shall be issued to all employees within each unit, and be completed by the employee requesting overtime.

**III.** **FIELD OPERATIONS: PATROL, NARCOTICS AND INVESTIGATIVE UNITS PROCEDURES AND GUIDELINES**

    **A.** All Court Notices, especially Preliminary Hearings, will be reviewed by supervisory personnel to determine whether the Officers appearance is necessary. All supervisors will be alert to the



EXHIBIT

number of Officers/Investigators subpoenaed for a particular case, and be aware of the number of consecutive days an investigator has been subpoenaed.

In those cases where more than three (3) officers/investigators are subpoenaed for court on the same case, an immediate review of all investigative reports will be initiated by the Commanding Officer and take action when warranted.  As stated in Memorandum 09-01 Overtime Management III-D-2, whenever there are six (6) or more personnel subpoenaed on the same case, the supervisor will contact the overtime management unit to refer the case for their review.

**B.** As per Memorandum 09-01 Overtime Management, when personnel are subpoenaed for court on a scheduled day off (SDO), the platoon supervisor shall initiate an immediate review of the case and arrest paperwork to determine the need for the Officer's appearance. If it appears that the Officer/Investigator is unnecessary, the supervisor shall contact the Overtime Management Unit to refer the case for their review.

**C.** Supervisors will not attend court without the approval of the Commanding Officer. Supervisors will ensure they are directing the investigation and not placing themselves in a position that will require their testimony at a later date.  It is critical that supervisors fully understand their role, and on those rare occasions when they are needed for court, Commanding Officers' approval will be necessary.

*Can not Do.*

**D.** All investigative Supervisors will be required to review and initial all investigative reports, including PARS reports, and only those officers necessary for prosecution will be subpoenaed to court, as outlined in our departmental policies.  All PARS arrest reports must be reviewed and approved by a Supervisor within ten (10) hours upon completion of the PARS Arrest Report

**E.** The assigned supervisor maintains the overall responsibility for the number of police personnel involved in case management. When feasible, the lead investigator, or co-investigator, will assume responsibility for handing multiple components of each case, including collecting physical evidence, writing property receipts, taking statements, and assuming the role of affiant on the search or arrest warrant. The narrative description included on all search or arrest warrants should match these assigned roles and responsibilities.

    **i.** Investigative supervisors shall review search and arrest warrants to ensure that the above practices are followed, and that each component of case management is handled by as few police personnel as possible, as needed for the successful prosecution of the case.

    **ii.** The assigned investigator or controlling officer will be responsible for conducting the necessary surveillance related to his/her investigation.

    **iii.** The assigned investigator will be responsible for preparing all search warrant(s) and/or arrest warrant(s) during a single investigation. Additionally, when feasible, if the investigation necessitates serving search warrants at multiple locations, the assigned investigator will be the affiant on each search warrant. The type and complexity of the investigations controls the number of officers directly involved in subsequent prosecution of the accused. In most cases, the affiant (assigned investigator) should obtain all search and seizure warrants, seize incriminating evidence/fruits of the crime, and prepare necessary property receipts.

iv.  The assigned officer/investigator should also be the confiscating officer and prepare necessary property receipts. During the execution of search and seizure warrants, all evidence will be seized by the confiscating officer. Officers participating in the search will not take custody of the evidence, but merely point out to the confiscating officer the location of the found evidence. The confiscating officer will take possession of the evidence and record on a property receipt. Officers will at all times follow proper chain of custody procedures.

v.  In most cases the assigned investigator should be responsible for the interview and interrogation of the accused. Formal statements taken from defendants should be limited to the lead investigator or his/her partner.

vi.  The assigned investigator will be responsible for conducting all field tests related to their investigations.

vii.  The assigned investigator will be responsible for preparing all property receipts (75-3) associated with an investigation. All provisions of Police Directive #91 Property Receipts will be strictly followed.

viii. Supervisors will no longer be listed on the PARS 75-49 as recording or reviewing the departmental "buy" money. This information will instead be listed on the squads sending and receiving sheet. Controlled "buys" made by confidential informants will be witnessed by the lead investigator and/or co-investigator.

ix.  The District Attorney's Office during some cases may also subpoena the officer/investigator for testimony relative to the "Report of Field Tester Affidavit" for a preliminary hearing. This is an unnecessary court notice, and the investigative supervisor shall contact the District Attorney's Office directly, and notify him/her that the affidavit serves as a sufficient basis to proceed in a preliminary hearing, without the direct testimony of the field test officer/investigator.

## V. FINAL AUTHORITY AND INTERPRETATION

A.  Overtime abuses or failures to comply with the above standard operating procedures may be subject to disciplinary action.